**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.J. and M.B.**

**No. 22-0379** (Wood County 20-JA-146 and 20-JA-147)

**MEMORANDUM DECISION**

Petitioner Mother C.J.[1] appeals the Circuit Court of Wood County's April 28, 2022, order terminating her parental rights to B.J. and M.B.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The proceedings giving rise to this appeal began in July of 2020, when the DHHR filed a petition alleging that petitioner was in possession of drugs and under the influence when she gave birth to B.J., who had to undergo nonpharmaceutical treatment for drug exposure. During the DHHR's investigation, petitioner indicated that she received her mail at her father's home in Belpre, Ohio, although she "confirmed she resides . . . in Parkersburg," West Virginia, along with her older child, M.B. The DHHR inspected the home in Parkersburg and found many of M.B.'s belongings there. Additionally, petitioner indicated that she previously "signed guardianship [of M.B.] over to her best friend." According to petitioner, M.B.'s legal guardian cared for the child in West Virginia for approximately four years while petitioner was homeless, although petitioner claimed to have reobtained custody of M.B. in September of 2019.

At the preliminary hearing in July of 2020, petitioner objected to jurisdiction in West Virginia under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") as set forth in West Virginia Code § 48-20-101 through § 48-20-404. At the time, petitioner argued that she lived with M.B. in Ohio for at least ten months prior to the filing of the petition. Petitioner

---

[1]Petitioner appears by counsel Nancy L. McGhee. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Debra L. Steed appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

did not, however, object to the West Virginia DHHR retaining temporary custody while the jurisdictional issue was addressed, so the court set the matter for adjudication in the interim.

During a hearing in August of 2020, the parties presented the court with an agreed order finding that Washington County, Ohio, had subject matter jurisdiction because Ohio was the home state of both children. According to the order, "[t]he [c]ourt heard evidence that the Ohio DHHR . . . declined to take this case at the time of the incident that led to the filing of the ratification," but the order stressed that no *court* had declined such jurisdiction. This order was then sent to the Washington County Court of Common Pleas for a ruling on jurisdiction. However, by order entered on September 1, 2020, the Ohio court declined to exercise jurisdiction, finding that "Wood County, West Virginia, would be a more convenient forum to hear the issues as one child has been in foster care in West Virginia for a considerable period of time and the other child who was born in Wood County, West Virginia[,] . . . has been in foster care in West Virginia since his birth."

In October of 2020, petitioner stipulated that her substance abuse prevented her from appropriately caring for the children. The court accepted the stipulation and adjudicated petitioner as an abusive and neglectful parent. The court then terminated her parental rights to both children by order entered on April 28, 2022, as a result of her continued substance abuse, missed drug screens, and other failures to remedy the conditions of abuse and neglect at issue.[3] On appeal, petitioner is clear that she is not challenging her adjudication or the termination of her parental rights. However, she does challenge the circuit court's denial of her request for post-termination visitation in regard to M.B. only. In denying post-termination visitation, the court noted that petitioner did not "make her children her number one priority," as evidenced by the fact that she had recently "completely stopped drug screening." The court noted that there was "some bond" between petitioner and M.B., who was then nine years old, although the court further expressed that "at some point, [M.B.] will need to move on and achieve permanency." Initially, the court expressed a willingness to permit petitioner to visit M.B. in the short-term while "re-address[ing] that upon adoption of the child, because the child will need permanency and to have a new life and stable environment with a new family." However, upon being reminded that petitioner had not had visits with M.B. for approximately four months, the court ultimately denied post-termination visitation with petitioner. Specifically, the court found that "it would not be in the child's best interests to reintroduce [petitioner] into the child's life only to, if the child is adopted, . . . be taking her back out." It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, petitioner first argues that the circuit court erred in assuming jurisdiction over the children under the UCCJEA. However, the record

---

[3]The court also terminated the respective fathers' parental rights to the children. The permanency plan for the children is adoption in the current placement.

2

shows that an Ohio court declined to exercise jurisdiction over the children, thereby granting West Virginia jurisdiction under West Virginia Code § 48-20-201(a)(3).

According to West Virginia Code § 48-20-201(a),

a court of this state has jurisdiction to make an initial child custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 20-207 or 20-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection.

Petitioner makes much of the fact that the Ohio court's order acknowledged that it "may have jurisdiction over the children," but this fact does nothing to bolster her position before this Court. Indeed, the plain language of West Virginia Code § 48-20-201(a)(3) contemplates a court *having jurisdiction* nonetheless declining to *exercise* that jurisdiction, which is exactly what happened below.

Petitioner also alleges that the Ohio court's determination that West Virginia was the more appropriate forum was based upon a material mistake of fact. Specifically, petitioner takes issue with the Ohio court's finding that M.B. had "been in foster care in West Virginia for a considerable period of time." According to petitioner, M.B. "was not and never had been in foster care in West Virginia." This argument, however, ignores the fact that at the time the Ohio court made this finding, M.B. had been in foster care in West Virginia for two months pursuant to this very proceeding.[4] It is puzzling why petitioner would argue on appeal that the child was

---

[4]Petitioner repeatedly stresses that "the child's living arrangements after the commencement of the proceeding . . . are not relevant to the determination of whether the court has *home state subject matter jurisdiction*." Syl. Pt. 7, in part, *In re Z.H.*, 245 W. Va. 456, 859

(continued . . . )

3

not in foster care in this state when the record clearly shows that the DHHR removed M.B. from her custody at the outset of the proceedings and placed the child in foster care throughout the case's duration. Petitioner appears to be arguing that the Ohio court mistakenly believed that M.B. was in foster care in West Virginia *before* the filing of the petition, but there is nothing to suggest that petitioner's interpretation of this finding is correct.[5] Simply put, the Ohio court declined jurisdiction upon accurate facts; that M.B. had been in foster care in this state for a considerable period and that B.J. had been in foster care in this state for that child's entire life.

On appeal, petitioner argues, without citation to any authority, that the circuit court "should have essentially remanded the [o]rder to the Ohio court with a correct statement of facts and asked the court to reconsider its [o]rder." Aside from the fact that petitioner can point to no authority permitting a circuit court to "remand" an order to a court from another state once it declines to exercise jurisdiction, we again stress that, based upon the record before us, we will not accept petitioner's interpretation of the Ohio court's findings as erroneous. Petitioner also argues that the circuit court erred in failing to address jurisdiction again upon her motion at the dispositional hearing, but we find no merit to this argument as the matter had been settled and the circuit court was under no requirement to address jurisdiction anew after Ohio's declination. Because the Ohio court declined jurisdiction, we find no error in the circuit court assuming jurisdiction pursuant to West Virginia Code § 48-20-201(a)(3), and petitioner is entitled to no relief.

Having found no error in the circuit court's exercise of jurisdiction, all that remains is to address petitioner's argument that it was error to deny her request for post-termination visitation with M.B. According to petitioner, she and the child shared a strong bond that should have permitted her to continue visitation after termination of her parental rights.

As we have explained,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has

---

S.E.2d 399 (2021) (emphasis added). This holding has no bearing on the circuit court's assumption of jurisdiction in this matter, however, as it did not do so in accordance with home state subject matter jurisdiction, as set forth in West Virginia Code § 48-20-201(a)(1), but, rather, declination jurisdiction under (a)(3).

[5]In support of her assertion that this finding is erroneous, petitioner cites to correspondence between the DHHR and the Ohio court, in addition to discussion during a hearing before the circuit court regarding the alleged "misunderstanding." It must be stressed, however, that none of the evidence to which petitioner cites demonstrates that the Ohio court intended this finding to mean that M.B. was in foster care *before* the instant proceedings commenced.

been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). As outlined above, the circuit court noted petitioner's lack of effort in ensuring that she was entitled to visitation throughout the proceedings in denying post-termination visitation, as petitioner had not visited the child for approximately four months because she tested positive for methamphetamine. The court also explicitly found that visitation would not be in the child's best interests because she required stability, which would be undermined by reintroducing petitioner into her life only to have petitioner removed again upon the child's eventual adoption. Because the record shows that post-termination visitation would have been detrimental and against M.B.'s best interest, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 28, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn